UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BUDCO FINANCIAL SERVICES, LLC, et al., | ) ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | Case No.  4:20-cv-01873-SRC |
| v. | ) | |
| | ) | |
| VSC NOW LLC, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

**<u>Memorandum and Order</u>**

Car manufacturers, car dealers, and independent companies all market and sell vehicle service contracts, which are contracts to perform (or pay for) certain repairs or services.  In this case Budco paid over a half a million dollars to finance the sale of vehicle service contracts—only to discover that the customers who supposedly bought those service contracts never existed. This lawsuit followed, and now Budco moves for default judgment as to two defendants and moves to enforce settlement with another.

**I.     Background**

This case stems from a "Seller Participation Agreement" between Budco and VSC Now. Doc. 1 at ¶ 7.  Budco claims that, per the Agreement, VSC Now would sell vehicle service contracts to customers, and Budco would pay the service contract provider the cost of the service contracts and then receive monthly installment payments from the customers.  Doc. 1 at ¶¶ 7, 9. Budco would also pay the Defendants a certain amount when the customer made the first installment payment.  *Id.* at ¶ 10.

Budco alleges that the Defendants fraudulently induced Budco to pay VSC Now $523,000 for vehicle service contracts that never existed.  *Id.* at ¶¶ 12–16.  Budco sued VSC

Now and VSC Now's three individual members (who signed the Budco–VSC Now Seller

Participation Agreement as guarantors, and signed additional personal guarantees) for fraud and

breach of contract.  Doc. 1.  Only one of the Defendants, David Simpson, filed an answer or

otherwise responded to the summons.  Doc. 12.  The Clerk of Court entered clerk's defaults as to

the other two individual Defendants, Sean Miller and William Finley, but denied entry of a

clerk's default as to VSC Now, finding that the record did not reflect proper service on VSC

Now.  Doc. 53.  Budco then filed a Motion for Default Judgment as to Miller and Finley, which

remains pending.  Doc. 63.

      Budco provided an affidavit by its counsel stating that counsel for Budco and counsel for

Simpson exchanged a series of emails regarding settlement between March 28 and 31, 2022.

Doc. 65-1 at ¶ 3.  Budco attached emails to the affidavit, attesting to their authenticity and

redacting certain information.  Doc. 65-1 at ¶ 3.  Having reviewed the unredacted version of the

emails in camera, *see* Doc. 70, the Court determines that the redacted portions do not affect the

Court's analysis regarding the existence or terms of a settlement agreement.  The Court includes

the relevant portions of the emails below.

      On March 28, 2022, counsel for Simpson sent an email to counsel for Budco, stating in

relevant part:

> In the spirit of making a good faith effort to resolve all claims with your client, Mr.
> Simpson proposes the following:
>
> - $10,000 upon execution of settlement documentation.
> - $90,000 paid over 5 years beginning 6 months following the execution of
>   the settlement documentation.
> - An additional $75,000, to be paid over 5 years, in the event Mr. Simpson
>   earns over $150,000 in any of the five years following the execution of
>   settlement documentation, as evidenced by filed tax returns.
> - Cooperation in support of efforts to collect against any other defendant in
>   this or any other claim involving Mr. Simpson.

Doc. 65-1 at pp. 7–8.  The subject line of the email stated: "Confidential Settlement Offer."  *Id.*

That same day, counsel for Budco replied:

> Budco counters the offer with:
>
> - $75,000 paid upon execution of settlement;
> - $150,000 paid over 10 years beginning 6 mos. Post-settlement;
> - Additional 50% of income in excess of $150,000 for each of 5 years post-settlement;
> - Cooperation as to Defendants Miller & Finley as well as potential defendant, Bobo.
> - Consent Judgment entered in amount of $400,000 (not filed unless a payment is missed and not cured within 30 days of written notice).

Doc. 65-1 at p. 6.  The following day, counsel for Simpson replied:

> I spoke with client. Counter:
>
> - $15,000 paid within 30 days of execution of settlement agreement;
> - $150,000 paid over 10 years beginning 6 mos. post-settlement;
> - Additional 50% of income in excess of $150,000 for each of 5 years post-settlement;
> - Cooperation as to Defendants Miller & Finley as well as potential defendant, Bobo.
> - Consent Judgment entered in amount of $300,000 (not filed unless a payment is missed and not cured within 30 days of written notice).

Doc. 65-1 at p. 5.  Counsel for Budco and counsel for Simpson spoke to each other on the phone two days later, on March 31, 2022.  Doc. 65-1 at ¶ 3.  Following that call, counsel for Budco replied:

> [S]o per our conversation of a few minutes ago, I understand that David Simpson is offering the following:
>
> - $15,000 within 30 days; $5,000 within 60 days of settlement;
> - $150,000 paid over 7 years beginning in 6 mos. In equal monthly payments;
> - Additional 50 % of income in excess of $150,000 annually for each of 5 years post-settlement, up to unpaid balance of consent judgment
>   - Tax returns and extensions to be provided within 5 business days of filing;
>   - Payment to be made within 10 days of earlier of extension or return filing date
> - Cooperation as to other defendants, to include:

        ○  Meeting on or before April 10 to share knowledge re other defendants;
        ○  Affidavit to be filed with MSJ at Budco's election
- Financial statement provided as part of closing of settlement
- Consent judgment for $350,000 (but amount of claim reverts to $800,000 in event of Bankruptcy and Budco retains right to assert that debt is non-dischargeable and David Simpson retains right to assert it is dischargeable) fileable with court only upon default.

1 [sic] point not discussed, but what Budco would want to see added is that $ paid within 60 days per first bullet point would need to be "held in escrow" say by Chuck or otherwise insulated from reach of Bankruptcy Trustee should David file bankruptcy.  Please let me know if this is an official offer (hopefully incorporating the last point not discussed on call).

Doc. 65-1 at p. 4.  Counsel for Simpson responded:

I spoke with Chuck and confirmed he's OK with additional provision below. Also, confirming our conversation from a moment ago, all payments made pursuant to settlement agreement will reduce the amount due under consent judgment.

Subject to this, confirming these terms are acceptable to our client.

Doc. 65-1 at p. 3.  A short time later, counsel for Budco replied:

The terms set forth in your email below and my prior email also below (as modified by your email) are also acceptable to Budco.

I will begin drafting proposed settlement agreement, consent judgment and any other documents required.

Doc. 65-1 at p. 3.

On April 6, 2022, Budco filed a request for a status conference, explaining that Budco and Simpson had "reached a settlement" and "may need guidance from the Court as to certain mechanics of their settlement."  Doc. 47 at ¶¶ 6–7.  Per the Court's notes, at the status conference on April 14, 2022, counsel for Budco reiterated that Budco and Simpson had reached a settlement agreement but wanted to make sure that they were not doing something that was going to cause problems down the road.  Counsel for Budco also stated that the parties had not yet signed the settlement agreement because they wanted to make sure the Court was okay with

it, and if the mechanics of the settlement did not run afoul of any considerations from the Court, then the parties would go in that direction and would be "done with Mr. Simpson." Counsel for Simpson agreed with counsel for Budco's summary of where the parties stood regarding their settlement.

Budco also provided an affidavit from its Vice President for Sales and Marketing, Mark Pierret. Doc. 73. Pierret's responsibilities at Budco include working with attorneys to "handle all matters related to the litigation against David Simpson et al and resolution thereof, including through settlement and receipt of settlement payments." *Id.* at ¶ 3. In the affidavit, Pierret states that "Budco has received no payment from David Simpson or anyone acting on his behalf at any time after commencement of the litigation against him. Specifically, Budco has not received a payment of $15,000 within thirty days of March 31, 2022 (or at any other time), nor a payment of $5,000 within sixty days of March 31, 2022 (or at any other time)." *Id.* at ¶ 4. Pierret further states that "David Simpson has neither met with me or anyone else at Budco nor its agents or attorneys at any time after March 31, 2022 to discuss his knowledge relevant to this litigation against him and other[s], nor has he provided an Affidavit." *Id.* at ¶ 5.

After reporting that Simpson refused to sign the settlement agreement, *see* Doc. 57, Budco filed a [65] Motion to Enforce Settlement Agreement, claiming that Budco and Simpson reached a settlement agreement, and that Simpson breached the agreement. Around the same time, counsel for Simpson filed motions to withdraw, citing a conflict of interest. Docs. 56, 58. After conducting in camera review of counsel's supporting information, the Court granted the motions to withdraw and gave Simpson 30 days (through July 15, 2022) to obtain new counsel and respond to Budco's Motion to Enforce Settlement Agreement. Doc. 67. To date, Simpson has not responded and no new counsel for Simpson has appeared.

The Court ordered Budco to supplement the record regarding the citizenship of Defendants Simpson, Miller, and Finley.  Doc. 74.  Having reviewed Budco's supplemental memorandum, Doc. 75, affidavit, Doc. 76, and attached exhibits, Docs. 76-1 to -7, the Court confirms that it has subject-matter jurisdiction.  The Court now takes up Budco's [65] Motion to Enforce Settlement Agreement with Defendant Simpson.

## II.    Standard

For the reasons discussed below, the Court applies Missouri law.  In Missouri, "A motion to enforce a settlement adds to the underlying case a collateral action seeking specific performance of the agreement." *Eaton v. Mallinckrodt, Inc.*, 224 S.W.3d 596, 599 (Mo. 2007) (citation omitted).  "[A] district court has inherent power to enforce a settlement agreement as a matter of law when the terms are unambiguous." *Barry v. Barry*, 172 F.3d 1011, 1013 (8th Cir. 1999) (citing *Gatz v. Southwest Bank of Omaha*, 836 F.2d 1089, 1095 (8th Cir. 1988)).  The moving party must present "clear, convincing and satisfactory" evidence that an agreement existed before the Court will order specific performance.  *Visiting Nurse Ass'n, St. Louis v. VNAHealthcare, Inc.*, 347 F.3d 1052, 1053 (8th Cir. 2003) (citing *Randall v. Harmon*, 761 S.W.2d 278, 278 (Mo. Ct. App. 1988); *Stewart v. M.D.F., Inc.*, 83 F.3d 247, 251–52 (8th Cir. 1996)).  "Evidence is clear and convincing if it instantly tilts the scales in the affirmative when weighed against the evidence in opposition, such that the fact finder's mind is left with an abiding conviction that the evidence is true." *Grant v. Sears*, 379 S.W.3d 905, 915 (Mo. Ct. App. 2012) (cleaned up) (quoting *Reppy v. Winters*, 351 S.W.3d 717, 720 (Mo. Ct. App. 2011).

"[A] district court has considerable discretion in determining the procedure appropriate to a motion to compel settlement," and only need to hold a hearing "if there are substantial questions of fact that are not already a matter of record." *Barry*, 172 F.3d at 1013  (citing

*Stewart*, 83 F.3d at 251).  "When a motion is based on facts not appearing of record, Fed. R. Civ. P. 43[(c)] provides that a district court 'may hear the matter on affidavits presented by the respective parties,' or 'may direct that the matter be heard wholly or partly on oral testimony or deposition.'"  *Stewart*, 83 F.3d at 251.  "This rule invests the district court with considerable discretion to tailor the proceedings to the practical realities surrounding the particular motion." *Id.*

## III.    Discussion

Budco argues that it reached a settlement agreement with Simpson on March 31, 2022, and that the Court has the authority to enforce the settlement agreement.  Doc. 66 at pp. 4–5. The Court addresses these arguments in turn.

### A.    Applicable state law

"Basic principles of contract formation govern the existence and enforcement of [an] alleged settlement."  *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006) (citing *In re Airline Ticket Comm'n Antitrust Litig.*, 268 F.3d 619, 623 (8th Cir. 2001); *Sheng v. Starkey Labs., Inc.*, 53 F.3d 192, 194 (8th Cir. 1995)).  In a diversity action such as this, the Court "must follow the choice of law rules of the state in which it sits in order to determine which state's substantive law applies."  *Birnstill v. Home Sav. of Am.*, 907 F.2d 795, 797 (8th Cir. 1990) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941)).

"Under Missouri law there is not an actual conflict of law unless the interests of two or more states cannot be reconciled."  *Brown v. Home Ins. Co.*, 176 F.3d 1102, 1105 (8th Cir. 1999) (citing *State ex rel. Broglin v. Nangle*, 510 S.W.2d 699, 703 (Mo. 1974)).  Budco briefed the motion to enforce settlement using both Michigan and Missouri law.

On the issues before the Court, no conflict of laws exists between Michigan and
Missouri.  In both states, contract law governs agreements to settle pending lawsuits.  *Compare
Randall v. Harmon*, 761 S.W.2d 278, 279 (Mo. Ct. App. 1988) (noting that "[a] compromise
settlement is a contract," and "must possess the essential elements of any other contract"
(citations omitted)), *with Walbridge Aldinger Co. v. Walcon Corp.*, 525 N.W.2d 489, 491 (Mich.
Ct. App. 1994) ("An agreement to settle a pending lawsuit is a contract and is to be governed by
the legal principles applicable to the construction and interpretation of contracts.").

Both Missouri and Michigan require mutual assent, or a meeting of the minds, on all
essential terms.  *Compare Warren v. Trib. Broad. Co., LLC*, 512 S.W.3d 860, 864 (Mo. Ct. App.
2017) (requiring "mutuality of assent or a meeting of the minds to the essential terms of a
contract" (citation omitted)), *with Kloian v. Domino's Pizza LLC*, 733 N.W.2d 766, 770 (Mich.
Ct. App. 2006) ("[A] contract requires mutual assent or a meeting of the minds on all the
essential terms.").  Contract formation in both states also requires offer and acceptance.
*Compare L.B. v. State Comm. of Psychologists*, 912 S.W.2d 611, 617 (Mo. Ct. App. 1995) ("[A]
contract is not complete until the proposition of one is presented to the other and accepted as
presented."), *with Kloian*, 733 N.W.2d at 770 ("Before a contract can be completed, there must
be an offer and acceptance.").  Since no conflict of law exists, the Court applies Missouri law.

### B.     Existence of the settlement agreement

Budco claims that Simpson and Budco reached a settlement agreement.  Under Missouri
law, "[t]he essential elements of a valid settlement agreement are the involvement of parties who
are competent to contract, a proper subject matter, legal consideration, mutuality of obligation,
and mutuality of agreement."  *Chaganti*, 470 F.3d at 1221 (citing *L.B.*, 912 S.W.2d at 617).  The

record does not contain any indication that the parties are not competent to contract, and the subject matter—the resolution of pending litigation—is proper.  *See id.*

### 1.    Consideration (mutuality of obligation)

"Consideration exists when there is a detriment to the promisee or a benefit to the promisor, and mutuality of obligation exists whenever there is consideration."  *Chaganti*, 470 F.3d at 1221 (first citing *State ex rel. Citibank (South Dakota), N.A. v. Wilson*, 160 S.W.3d 810, 813 (Mo. Ct. App. 2005), then citing *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 859 (Mo. 2006)).  Under the agreement, Simpson received a benefit—the resolution of all of Budco's claims against him.  Doc. 65-1 at p. 8 ("In the spirit of making a good faith effort to resolve all claims with [Budco], Mr. Simpson proposes the following . . . .").  Budco received structured payments, Simpson's cooperation with the other Defendants, and an affidavit.  Doc. 65-1 at p. 4.  Thus, consideration—and mutuality of obligation—were present.

### 2.    Meeting of the minds (mutuality of agreement)

"Mutuality of agreement requires 'a mutuality of assent by the parties to the terms of the contract,' i.e., a 'meeting of the minds.'"  *Chaganti*, 470 F.3d at 1221 (quoting *L.B.*, 912 S.W.2d at 617).  "[C]ourt[s] should determine whether such a meeting of the minds took place by 'looking to the intentions of the parties as expressed or manifested in their words or acts.'"  *Id.* (quoting *L.B.*, 912 S.W.2d at 617).  Courts should then "interpret[] those manifestations as a reasonable person would."  *Visiting Nurse Ass'n*, 347 F.3d at 1054 (citing *McDaniel v. Park Place Care Ctr., Inc.*, 918 S.W.2d 820, 827 (Mo. Ct. App. 1996)).  "If those manifestations produce a reasonably ascertainable objective meaning, an enforceable agreement exists."  *Id.*

The Court also notes that "an attorney is presumed to possess authority to act on behalf of the client," although "a judgment entered upon an agreement by the attorney may be set aside on

affirmative proof that the attorney had no right to consent to its entry." *Greater Kansas City Laborers Pension Fund v. Paramount Indus., Inc.*, 829 F.2d 644, 645 (8th Cir. 1987) (quoting *Sur. Ins. Co. of Cal. v. Williams*, 729 F.2d 581, 582 (8th Cir. 1984)).  Simpson has not responded to the motion to enforce settlement, and nothing in the record suggests that counsel for Simpson did not possess actual authority to act on Simpson's behalf.  *See* Doc. 65-1 at p. 8 (Counsel for Simpson:  "Mr. Simpson proposes the following"); Doc. 65-1 at p. 3–4 (Counsel for Simpson:  "[C]onfirming these terms are acceptable to our client").

Budco and Simpson, through counsel, made a series of offers and counteroffers via email and at a phone call.  Doc. 65-1 at pp. 3–8.  Following the phone call on March 31, 2022, counsel for Budco sent an email to counsel for Simpson, seeking confirmation of Simpson's proposed terms and adding one point not discussed on the call.  *Id.* at pp. 4–5.  Counsel for Budco concluded the email by stating:  "Please let me know if this is an official offer (hopefully incorporating the last point not discussed on call)."  *Id.* at p. 4.  Counsel for Simpson responded by email a short time later, stating:

> I spoke with Chuck and confirmed he's OK with additional provision below. Also, confirming our conversation from a moment ago, all payments made pursuant to settlement agreement will reduce the amount due under consent judgment.
>
> Subject to this, confirming these terms are acceptable to our client.

*Id.* at p. 3.  Shortly thereafter, counsel for Budco responded:

> The terms set forth in your email below and my prior email also below (as modified by your email) are also acceptable to Budco.
>
> I will begin drafting proposed settlement agreement, consent judgment and any other documents required.

*Id.* at p. 3.

The key question is whether by this email exchange the parties, through counsel, manifested mutual assent sufficient to form a settlement agreement, or merely engaged in preliminary negotiations.  This question is "usually [one] of intention."  *Ellison v. Wood Garment Co.*, 286 S.W.2d 27, 31 (Mo. Ct. App. 1956) (citing *Shapleigh Inv. Co. v. Miller*, 193 S.W.2d 931, 937 (Mo. App. 1946); *Eads v. City of Carondelet*, 42 Mo. 113 (Mo. 1867); Restatement (First) of Contracts § 26 (1932)).

"The mere fact that parties contemplate a formal written draft of their agreement at a later time is not sufficient in itself to demonstrate that they did not intend to be bound at the time of their original agreement."  *Woodson v. Bank of Am., N.A.*, 602 S.W.3d 316, 326 (Mo. Ct. App. 2020) (quoting *Hunt v. Dallmeyer*, 517 S.W.2d 720, 724 (Mo. Ct. App. 1974)) (citing *Matthes v. Wynkoop*, 435 S.W.3d 100, 107 (Mo. Ct. App. 2014)).  In other words,

> Where parties negotiate an agreement and clearly express an intention not to be bound until a formal contract is executed, such intention must be respected. But, where the parties fail to state that their negotiations are to be regarded as merely contingent upon the final execution of a written agreement, the question of whether they intended to be bound by anything less than such a contract is sometimes a rather difficult question.  It is resolved by ascertaining whether the parties actually looked upon the formal writing merely as evidence of their preliminary agreement, or as an operative fact without which they intended not to be bound.  The mere fact that the parties contemplate a formal written draft of their agreement is not sufficient in itself. . . . In addition, it must appear that the parties intended not to be bound until such a writing was signed.

*Shapleigh*, 193 S.W.2d at 937 (citations omitted); *see also Green v. Cole*, 15 S.W. 317, 318 (1891) ("[I]t is well-settled law that, where the parties have assented to all the terms of the contract, the mere reference to a future contract in writing does not negative the existence of a present contract.").

Missouri courts have also approvingly cited the relevant section of the Restatement (First) of Contracts, which states:  "[m]utual manifestations of assent that are in themselves sufficient to make a contract will not be prevented from so operating by the mere fact that the

parties also manifest an intention to prepare and adopt a written memorial thereof; but other facts may show that the manifestations are merely preliminary expressions . . . ."  Restatement (First) of Contracts § 26 (1932); *see, e.g.*, *Inloes v. Inloes*, 567 S.W.2d 732, 735 (Mo. App. 1978) (citing Restatement (First) of Contracts § 26 (1932); Restatement (Second) of Contracts § 27 (Tent. Draft 1973)).  Restatement (Second) of Contracts § 27 is essentially identical.  *See also Customized Transp., Inc. v. Bradford*, 114 F.3d 1186 (6th Cir. 1997) (applying Michigan law and relying on § 27 to find an enforceable contract notwithstanding failure to execute).  Comment (a) to the relevant section of both Restatements elaborates:

> Parties who plan to make a final written instrument as the expression of their contract necessarily discuss the proposed terms of the contract before they enter into it and often, before the final writing is made, agree upon all the terms which they plan to incorporate therein.  This they may do orally or by exchange of several writings.  It is possible thus to make a contract to execute subsequently a final writing which shall contain certain provisions.  If parties have definitely agreed that they will do so, and that the final writing shall contain these provisions and no others, they have then fulfilled all the requisites for the formation of a contract.

Restatement (First) of Contracts § 26 cmt. a; Restatement (Second) of Contracts § 27 cmt. a.

In *Woodson*, counsel for the respective parties exchanged via email a 10-paragraph memorandum containing the terms of settlement.  602 S.W.3d at 323.  The Missouri court of appeals rejected the argument that paragraph 10—which stated:  "Settlement to be completed in final settlement agreement"—meant that the parties were not bound until they approved and signed a formal settlement document.  *Id.* at 326.  The court of appeals agreed with the trial court that the paragraph was "merely a statement recognizing the parties would incorporate the terms of settlement into a standard written settlement agreement." *Id.*  In reaching this conclusion, the court noted that "the language of paragraph 10 does not 'clearly express an intention not to be bound until a formal contract is executed.'" *Id.* (quoting *Shapleigh*, 193 S.W.2d at 937).  The court also took into account the fact that when counsel for the party opposing settlement "agreed

that the trial court should be notified that the matter was settled," counsel made "no effort . . . to clarify that the settlement was not final until signed." *Id.*

Here, as in *Woodson*, the Court finds that the parties did not "clearly express" an intention not to be bound until they had executed a formal settlement agreement. *See id.*; *see also Shapleigh*, 193 S.W.2d at 937.  Rather, the parties agreed via email to the terms of the settlement—including the amount and language of a consent judgment—and merely referred to formalizing their agreement in a final written document.  The Court notes that similar to *Woodson*, at the status conference on April 14, 2022, counsel for Simpson did not make any attempt to clarify that the settlement was not final until signed—rather, he agreed with the representation of counsel for Budco that the parties had reached a settlement and needed guidance from the Court regarding certain mechanics of their settlement agreement.  Thus, the Court finds that the parties through their emails "reached an agreement sufficiently definite and clear in its terms to make a binding contract," and "regarded the formal writing which they contemplated preparing merely as a memorial of their preliminary agreement, and not as necessary to the consummation of the contract."  *See id.*

### 3.     Statute of frauds

Although Budco does not address the issue, the Court is mindful of Missouri's statute of frauds, which provides in relevant part:

> No action shall be brought . . . upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized . . . .

Mo. Rev. Stat. § 432.010; *see also* Mich. Comp. Laws § 566.132 (containing a similar one-year statute-of-frauds requirement).  "The longstanding interpretation of the one year provision in this statute of frauds is that an oral contract for a definite period of time exceeding one year falls

13

within the statute and is unenforceable unless some written memorandum sufficiently documents the contract to take it outside the statute of frauds." *Vess Beverages, Inc. v. Paddington Corp.*, 886 F.2d 208, 212 (8th Cir. 1989) (citing *Int'l Plastics Dev., Inc. v. Monsanto Co.*, 433 S.W.2d 291, 292–93 (Mo. 1968); *Blue Valley Creamery Co. v. Consol. Prods. Co.*, 81 F.2d 182, 184 (8th Cir. 1936) (interpreting Missouri law)).

Here, one of the terms of the settlement agreement provides that, beginning six months after the settlement, Simpson will pay $150,000 over seven years, in equal monthly payments. Doc. 65-1 at p. 4.  The agreement also provides that Simpson will pay an "[a]dditional 50% of income in excess of $150,000 annually for each of 5 years post-settlement, up to unpaid balance of consent judgment." *Id.*  While it is possible that Simpson could pay the amount owed within one year, the parties clearly contemplate payments over a period exceeding one year, potentially implicating the statute of frauds.  *See, e.g.*, *Vess Beverages*, 886 F.2d at 212–13 (finding agreement contemplating two years of royalty payments fell within statute of frauds, despite the possibility of paying off the total amount immediately); *see also Biest v. Ver Steeg Shoe Co.*, 70 S.W. 1081, 1086 (Mo. Ct. App. 1902) ("It is well-nigh universally held that if an agreement fixes a definite period longer than a year during which performance shall continue, so that it was plainly not contemplated by the parties that it should terminate sooner, the statute applies . . . ."); *Kloian*, 733 N.W.2d at 772–73 (noting that Michigan statute requiring evidence of settlement agreements to be in writing is "in the nature of a statute of frauds").

However, even if the parties' agreement falls within the statute of frauds, the parties' emails satisfy the writing requirement.  Each email contains the electronic signature of counsel at the bottom of the email, and the series of emails contain all the essential terms of the contract. *See Int'l Casings Grp., Inc. v. Premium Standard Farms, Inc.*, 358 F. Supp. 2d 863, 870, 872

(W.D. Mo. 2005) (collecting cases and finding that email response "ok" to proposed modifications to a written contract represented agreement and satisfied Missouri's statute of frauds); *see also Vess Beverages*, 886 F.2d at 213 (to satisfy the statute of frauds, memorandum may consist of a series of writings, and the signature may take many forms, "so long as it conveys an intention to authenticate the writing");  *Dinuba Farmers' Union Packing Co. v. J.M. Anderson Grocer Co.*, 182 S.W. 1036, 1038–39 (Mo. Ct. App. 1916) (noting that to satisfy the signature requirement of Missouri's statute of frauds, an agent may type or stamp his own name (or the principal's) in the body of the memorandum or at the beginning or end of it); *Kloian*, 733 N.W.2d at 773–74 (holding that typing attorney's name at the end of an email message satisfied "writing, subscribed" requirement under Michigan law).  For these reasons, the Court finds that Budco has shown by clear, convincing, and satisfactory evidence that the Budco and Simpson entered into a settlement agreement.

### C.    Enforcement of the settlement agreement

Having found that the parties entered into a settlement agreement, the Court turns to the issue of enforcement.  As mentioned, "a district court has inherent power to enforce a settlement agreement as a matter of law when the terms are unambiguous. *Barry*, 172 F.3d at 1013 (citing *Gatz*, 836 F.2d at 1095).

Here, the Court finds that in exchange for "resolv[ing] all [of Budco's] claims" against Simpson, Doc. 65-1 at p. 8, the parties agreed to the following terms:

- Simpson would pay:
    - $15,000 within 30 days; $5,000 within 60 days of settlement;
        - These initial payments within 60 days must be "held in escrow" or otherwise insulated from reach of Bankruptcy Trustee should Simpson file for bankruptcy;
    - $150,000 over 7 years beginning in 6 months, in equal monthly payments;
    - An additional 50 % of income in excess of $150,000 annually for each of 5 years post-settlement, up to unpaid balance of consent judgment;
        - Tax returns and extensions to be provided within 5 business days of filing;

- ▪ Payment to be made within 10 days of earlier of extension or return filing date;
- Simpson would cooperate as to other defendants, to include:
  - ○ Meeting on or before April 10 to share knowledge re other defendants;
  - ○ Affidavit to be filed with MSJ at Budco's election;
- Simpson would provide a financial statement as part of closing of settlement;
- Consent judgment for $350,000 (but amount of claim reverts to $800,000 in event of Bankruptcy and Budco retains right to assert that debt is non-dischargeable and David Simpson retains right to assert it is dischargeable) fileable with court only upon default;
  - ○ All payments made pursuant to settlement agreement will reduce the amount due under consent judgment.

Doc. 65-1 at pp. 3–8. The Court finds that these terms are unambiguous; thus, the Court may enforce the settlement agreement. *See Barry*, 172 F.3d at 1013.

## IV.   Conclusion

The Court grants in part Plaintiff Budco's [65] Motion to Enforce Settlement Agreement. The Court finds that Budco and Simpson reached a settlement agreement resolving all of Budco's claims against Simpson in exchange for Simpson providing payments and other consideration, as outlined above. Accordingly, the Court dismisses Defendant David Simpson with prejudice. The Court does not retain jurisdiction over Budco and Simpson's settlement agreement.

The Court notes that the record does not reflect that Budco properly served VSC Now, and the Clerk of Court denied entry of clerk's default as to VSC Now on that basis. Doc. 53. While "failure to prove service does not affect the validity of service," Budco has not moved to amend proof of service, *see* Fed. R. Civ. P. 4(l)(3); nor has Budco shown good cause for its failure to serve VSC Now. Fed. R. Civ. P. 4(m). Accordingly, the Court dismisses Defendant VSC Now without prejudice under Fed. R. Civ. P. 4(m).

In considering Budco's [63] Motion for Default Judgment, the Court notes that Budco has not provided an affidavit complying with an applicable provision of the Servicemembers Civil Relief Act, codified at 50 U.S.C. § 3931. Accordingly, by no later than October 7, 2022,

16

Budco must "file with the court an affidavit—(A) stating whether or not the defendant is in military service and showing necessary facts to support the affidavit; or (B) if the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to determine whether or not the defendant is in military service." 50 U.S.C. § 3931.  The Court notes that the Servicemembers Civil Relief Act website, https://scra.dmdc.osd.mil/scra, provides a method for obtaining this information.  Failure to comply may result in dismissal without prejudice of remaining Defendants Miller and Finley.

So Ordered this 3rd day of October 2022.

STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE